The **OSAGE TRIBE OF INDIANS OF OKLAHOMA,** Plaintiff,

v.

The **UNITED STATES of** America, Defendant.

Nos. 99–550 L, 00–169 L.

United States Court of Federal Claims.

Feb. 24, 2011.

Wilson K. Pipestem, Washington, DC, for plaintiff. Merrill C. Godfrey, Washington, DC, and James P. Tuite, Washington, DC, of counsel.

Joseph H. Kim, with whom were Ignacia S. Moreno, Assistant Attorney General, Romney S. Philpott and Brian M. Collins, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant.

## *ORDER*

EMILY C. HEWITT, Chief Judge.

Currently before the court are Defendant's Objection to Proposed Resolution (defendant's Objection or Def.'s Objection), Docket Number (Dkt. No.) 629, and Osage Nation's Response to the United States' Brief Dated February 18, 2011 (plaintiff's Response or Pl.'s Resp.), Dkt. No. 630.

Pursuant to the court's Opinion of December 29, 2010, the parties filed a Joint Statement Regarding the Calculation of Damages (Joint Statement), Dkt. No. 617, on January 25, 2011. On February 8, 2011, the court granted Defendant's Motion for Partial Reconsideration, permitting defendant "to use the 40–degree prices found within the Koch database 'regardless of whether those damages were calculated from prices from the Top 50[L]ists,'" and ordering the parties to revise their damages calculation accordingly. Order of Feb. 8, 2011 (Reconsideration Order), Dkt. No. 622, at 5 (quoting Def.'s Mot.

for Partial Reconsideration, Dkt. No. 610, at 10). The parties disagreed on the revised calculation of damages, with a final underpayment calculation difference of $170,149.14 (before adjustment to current value). *Compare* Def.'s Revised Calculation of Damages (defendant's Damages Calculation or Def.'s Calc.), Dkt. No. 624, Ex. 1 at 7 (final underpayment calculation of $32,933,484.05) *with* Osage Nation's Damages Calculation Pursuant to the Order Dated February 8, 2011 (plaintiff's Damages Calculation or Pl.'s Calc.), Dkt. No. 625, Ex. A at 6 (final underpayment calculation of $33,103,633.19).

■ Pursuant to the court's Reconsideration Order, both parties filed statements purporting to explain the basis of their disagreements. *See generally* Osage Nation's Statement Pursuant to the Order Dated Feb. 8, 2011 (Pl.'s Statement), Dkt. No. 626; Def.'s Statement Regarding the Revised Calculations of Damages (defendant's Statement or Def.'s Statement), Dkt. No. 627. Plaintiff stated that it reached its revised damages calculation by using the parties' Joint Statement "which did not rely on any of the Koch database 40-degree prices for Osage County[,] and substituting the figures in Mr. Reineke's rebuttal report dated June 26, 2010 (PX 1616), for the period from January 1981 to May 1994, which *do* use those numbers." Pl.'s Statement 1 (emphasis in original); *see* Rebuttal Expert Report of Daniel T. Reineke, P.E. (Reineke Rebuttal Report or Reineke Rebuttal Rpt.), Dkt. No. 547, at 2–3.

To determine its revised damages calculation, defendant stated that it "replaced [p]laintiff's estimated 40-degree prices where they could be replaced with proven Koch 40-degree prices" using plaintiff's gravity adjustment methodology. Def.'s Statement 2. Defendant suggested that plaintiff's revised damages calculation gravity adjusts the Koch 40-degree prices "in a manner inconsistent with [p]laintiff's positions at summary judgment and at trial." *Id.* at 2–3. Defendant appears to argue that plaintiff's revised damages calculation employs defendant's gravity adjustment methodology, which, according to defendant, is an "avenue[ ] [that] do[es] not

appear to be open under the [c]ourt's orders." Def.'s Statement 4; *see also* Def.'s Objection 2 (arguing that the calculation set forth in the Reineke Rebuttal "*should* be made ... *if* [defendant] had prevailed on the gravity adjustment issue at trial" (emphasis in original)); *Osage Tribe of Indians of Oklahoma v. United States,* 96 Fed.Cl. 390, 444 (2010) (finding plaintiff's gravity adjustment methodology reasonable).

In an effort to resolve the $170,149.14 difference between the parties' revised damages calculations, the court issued an order proposing "the adoption of the $1,462,676 figure set forth in the Reineke Rebuttal Report ... [reduced by] 'approximately $39,000,' a figure that purports to incorporate 'some of the previous revisions from the January 25, 2011 joint submission for this period for unrelated, non-gravity adjustment issues.' " Order of Feb. 16, 2011, Dkt. No. 628, at 2 (quoting Pl.'s Statement 2). As support for the $1,462,676 figure, the court cited both the Reineke Rebuttal Report, which was admitted as PX 1616 at trial, and testimony offered by Mr. Reineke. *Id.* In Defendant's Opening Post–Trial Brief for Trial Beginning June 30, 2010 (defendant's Post–Trial Brief or Def.'s Post–Trial Br.), Dkt. No. 569, defendant "agree[d] that Mr. Martin's ... calculation, which yielded a $1.6 million figure,[1] does not accurately represent the damages ... claimed by [p]laintiff, and further agree[d] that Mr. Reineke has correctly calculated the value of this error at $1.4 million." Def.'s Post–Trial Br. 29 (footnote added). Defendant claimed that the "problem" associated with "Mr. Martin's presentation of [the] issue" resulted from a "fundamental difference in the gravity adjustment methodologies used by the two experts." Def.'s Post–Trial Br. 29.

Defendant objected to the court's proposed resolution, reiterating its argument that any agreement with Mr. Reineke's $1.4 million figure offered by defendant "was premised on the 'fundamental difference in the gravity adjustment methodologies used by the two experts.' " Def.'s Objection 2 (quoting Def.'s Post–Trial Br. 29). Defendant contends that

---

1. The actual figure Mr. Martin calculated was $1,654,743. The Declaration [and Expert Report] of Ronnie A. Martin, Docket Number (Dkt. No.) 527, ¶ 35.

its revised final underpayment calculation "is what comports with the current orders in this case." *Id.; see* Def.'s Calc. Ex. 1 at 7 (final underpayment calculation of $32,933,484.05). Plaintiff counters that defendant "argues without specificity or support that Mr. Reineke's calculations in the trial record are somehow reliant on gravity adjustment methodologies that ... the court rejected at trial." Pl.'s Resp. 2. Indeed, the court does not find that either the evidence or the testimony presented at trial suggests that Mr. Reineke reached his $1.4 million figure by relying upon a gravity adjustment methodology rejected by the court.

The trial evidence and testimony that addresses the proposed reduction in plaintiff's damages should the 40–degree prices calculated from the Joint Database be replaced with the 40–degree prices from the Koch database was limited. The Martin Expert Report simply stated that defendant's recently accessed portions of the Koch crude oil database "confirms that the values calculated by Mr. Reineke are overstated by $1,654,743." Martin Expert Rpt. ¶ 35. The Martin Expert Report also offers Exhibit R, which is an 891–page spreadsheet that compares the 40–degree prices calculated from the Joint Database with the 40–degree prices from the Koch database. *Id.* at Ex. R. At trial, Mr. Martin testified that he reached his $1.6 million figure by "simply substitut[ing] the 40[-]degree price that Koch had for Osage leases into Mr. Reineke's model instead of the 40[-]degree price that [Mr. Reineke] calculated [from the Joint Database]." Tr. 549:15–18 (Mr. Martin). When asked about prices at other degrees, Mr. Martin responded: "Mr. Reineke had a gravity scale methodology, and I had a different gravity scale methodology, so all I did was address the portion where I got the 40–degree price taken care of." *Id.* at 550:3–7. The Reineke Rebuttal Report attributes the discrepancy between Mr. Reineke's $1.4 million figure and Mr. Martin's $1.6 million figure to Mr. Martin's gravity adjustment of "the highest normalized price back down even though his contention is that there was no gravity adjustment in the original price." Reineke Rebuttal Rpt. 3. At trial, Mr. Reineke further explained:

> [A]s I understand it, ... [Mr. Martin] adjusted the alleged deemed price back down to the gravity scale or to the gravity of the purchase when Mr. Martin believes that it was a 40[-]degree gravity price to start with. So there was a second calculation that reduced the amount that I didn't think should be reduced.... [I]f they're really 40[-]degree deemed prices they should stay at 40 degrees again and not be reduced down.

June 30 and July 1, 2011 Revised and Corrected Transcript (Tr.), Dkt. No. 577, 354:7–15, 22–24 (Mr. Reineke). Given the foregoing evidence, it is not clear to the court that Mr. Reineke reached his $1.4 million figure by relying upon a methodology that does not "comport[ ] with the current orders in this case." *See* Def.'s Objection 2.

Defendant simply fails to persuade the court that Mr. Reineke's $1,462,676 is "somehow unreasonable under the standard of [*Confederated Tribes of the Warm Springs Reservation v. United States* (*Warm Springs* ), 248 F.3d 1365 (Fed.Cir.2001) ], under which inferences are to be drawn in plaintiff's favor." *Osage Tribe of Indians of Okla. v. United States,* 93 Fed.Cl. 1, 22 (2010). "[O]nce the beneficiary has shown a breach of the trustee's duty and a resulting loss, the risk of uncertainty as to the amount of the loss falls on the trustee." *Warm Springs,* 248 F.3d at 1371. Defendant has breached its fiduciary duties as trustee for plaintiff, and plaintiff "is entitled to a reasonable estimate of the damages it is due." *Osage Tribe of Indians of Oklahoma v. U.S.,* 96 Fed.Cl. at 409. The court finds that it is reasonable to reduce the parties' Joint Statement of final damages calculation by $1,462,676, the amount set forth in the Reineke Rebuttal Report, an amount attributable to using 40–degree prices from the Koch database rather than the 40–degree prices derived from the Joint Database.[2] Plaintiff

---

2. Both parties objected to the court's proposed reduction of "approximately $39,000" from Mr. Reineke's $1.4 million figure. Def.'s Objection to

Proposed Resolution, Dkt. No. 629, at 3; Osage Nation's Resp. to the United States' Brief Dated February 18, 2011, Dkt. No. 630, at 2. *See* Order

has performed this calculation by substituting into the parties' Joint Statement of final damages the figures from the Reineke Rebuttal Report for the months January 1981 to May 1994. *See* Pl.'s Resp. 2–3, Ex. C.

Pursuant to the foregoing and to the Opinion of December 29, 2010, PLAINTIFF IS AWARDED DAMAGES FOR BREACH OF TRUST IN THE AMOUNT OF $330,735,185.55. *See* Pl.'s Resp. Ex. A; *see also id.* at 3 (stating that the "current value for all damages amounts has been updated through February 24, 2011").

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. *See* Rules of the United States Court of Federal Claims 1.

IT IS SO ORDERED.

of Feb. 16, 2011, Dkt. No. 628, at 2. The court does not incorporate this figure into the final calculation of damages that plaintiff is owed.